831 F.2d 291
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Darlene C. Davis RUHL, Plaintiff-Appellant,
v.
Louis NILES, Deputy Sheriff, Thomas Alderman, Deputy
Sheriff, Christof Dempsey, Deputy Sheriff, Francis Seib,
Deputy Sheriff, George Randall Ruhl, John Gregory Ruhl,
Penny Schnably, Elizabeth Kennedy, Defendants-Appellees
and
James M. Roby, Register of Wills, Defendant.
 No. 86-3598.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 4, 1987.
Decided: Sept. 29, 1987.
 
 Christopher Shaw Lambert (Whiteford, Taylor & Preston on brief) for appellant.
 Paul William Barnett, James McCadden for appellees.
 D.Md.
 AFFIRMED.
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-83-1197-JFM).
 Before DONALD RUSSELL, WIDENER and CHAPMAN, Circuit Judges.
 RUSSELL, Circuit Judge.
 
 
 1
 The plaintiff has filed this 1983 action for the redress of alleged constitutional violations suffered by her at the hands of the defendants herein. The defendants are James M. Roby, the Register of Wills of Allegheny County (Md.); four Allegheny County deputy sheriffs; Louis Nies; Thomas Alderman; Christof Dempsey and Francis Seib, two sons of the deceased George A. Ruhl, A. Randall Ruhl, and John Gregory Ruhl, who, under appointment of the Orphans' Court of Allegheny County, are legal representatives of the Estate of George A. Ruhl and the primary beneficiaries under his will, and two women employees of the Ruhls. The constitutional violations charged were (1) that the defendants, acting together, violated her right of privacy under the Fourth Amendment in the house at 1616 Frederick Street in Cumberland, Maryland, by forcibly entering the house on two occasions, one on October 5 and the other on the following day; (2) that, after entry, the defendants wrongfully removed from the house and deprived her of personal property in the house, (3) that, on the second entry, the defendants had subjected her to an illegal arrest, and (4) that in effecting such arrest the officers Dempsey and Seib had used excessive force. After considerable discovery, during which the circumstances involved in the two incidents complained of were thoroughly inquired into, all the defendants moved for summary judgment in their favor. The district court granted the motion of the defendant Roby for summary judgment on the ground of absolute immunity and we do not understand that the plaintiff appeals this dismissal. The district judge thereafter granted the motion of the defendants except for the fourth claim of the plaintiff against the officers Dempsey and Seib on which it denied summary judgment. The district court entered an order under Fed.R.Civ.P. 54(b) directing the entry of final judgment in favor of all defendants on all claims "except as to the claim asserted by plaintiff against defendants Dempsey and Seib for alleged use of excessive force" upon a finding by it that there was no "just reason for delay." The plaintiff has appealed this order of judgment. We affirm.
 
 
 2
 This controversy arose out of the plaintiff's relationship with the deceased George A. Ruhl. The plaintiff had been living with the deceased Ruhl since 1967 in the deceased's home at 1616 Frederick Street, Cumberland, Maryland. They were not married, though the plaintiff claimed the status of a "common-law wife" allegedly based on an invalid marriage ceremony in 1967.[1] The deceased had died on September 11, 1982, leaving a will which was duly admitted to probate on September 15, 1982, four days after the death. Under the will, the house in which the deceased and the plaintiff were living, along with the furnishings therein except for certain identified pieces of furniture specifically given the plaintiff, was devised to the two sons of the deceased's only valid marriage. After the publication of the will, the attorney for the legal representatives of the estate (the two sons of the deceased by his only valid marriage) asked the plaintiff to vacate the house where the plaintiff had lived with the deceased, gave her a date within which she was to be without, and warned her that her status after that date would be as a trespasser. The plaintiff responded through her attorney by contending that her status was that of a "common-law wife" of the deceased and that as such she was entitled to remain in the house and to share in the estate under the Maryland statute of distribution.[2] The attorney for the estate's counsel replied that the plaintiff's claim was without validity[3] and said he would seek court action. At his instance, a Rule to Show Cause was issued requiring the plaintiff to vacate the premises or show cause on a date fixed why she should not. This Rule was given the Sheriff for service and two deputies were delegated by him to make service. The two Ruhls, as the legal representatives of the Estate, accompanied the officers. Their intention was to list the property of the Estate in the house as a part of their responsibility as representatives of the Estate.
 
 
 3
 The officers and the Ruhls arrived at the house in the afternoon of October 5. After knocking and ringing the doorbell without avail, one of the Ruhls inquired whether he could knock out a pane in a louvered storm door and thereby gain access. The officers, assuming that the legal representatives as the owner of the property had such right, agreed. The officers and the Ruhls in this manner gained access to the house where they were met by the plaintiff with a can of mace. After relieving the plaintiff of the mace, the officers read to her the Rule. While the officers had been knocking at the door the plaintiff had called the city police, who arrived just after the defendants had gained access to the house. After some discussion, the defendants departed but not before the legal representative said they had noticed a number of pieces of valuable furniture which apparently the plaintiff had already removed from the house. The defendants departed.
 
 
 4
 The next day the attorney for the Estate secured a temporary injunction requiring the plaintiff forthwith to vacate the premises.[4] This order of the Orphans' Court was delivered to the Sheriff for service. Two deputies, the defendants Dempsey and Seib, were ordered to serve the Order. The Sheriff, interpreting the Order, instructed the deputies to whom he committed the task of enforcing the Order that if the plaintiff did not obey the Order to arrest her as a trespasser. The officers, along with the Ruhls and two female employees of the Ruhls, returned to the house, effected an entrance by opening, apparently without any force, and published to her the Order. The plaintiff, after telephoning her attorney, told the officers that, on advice of her counsel, she would not vacate the premises unless she was arrested. The officers responded by arresting her. They directed her to put on street dress. Since they had heard that the plaintiff had a gun in the house, the officers told the plaintiff that they wished the two women to accompany the plaintiff while she dressed in street attire. The plaintiff alleges that in arresting her the two officers had been guilty of the use of excessive force. Taken to the police headquarters, the plaintiff was released on order of the Circuit Court into the custody of her attorney, based on the agreement of the plaintiff that she would obey the Order of the Orphans' Court and would not return to the Frederick Street house.
 
 
 5
 Basically, it is the contention of the plaintiff on this appeal that the district court erred in failing to find a constitutional violation in the entries of the defendants into the house on Frederick Street. It predicated this claim at the outset on the ground that she was the "common-law wife" of the deceased and that this house was the "marital" home. The district court, however, said in his order granting summary judgment that the "plaintiff does not deny that the Ruhls were the personal representatives of their father's estate, that the estate was the owner of the house and that, as a matter of Maryland law, the property right to the house belonged to the estate." Implicit in this holding was the Court's conclusion that the plaintiff herself had no right as an owner or as tenant, permissive or actual after the notice given her to vacate the house. The actual entry into the house on both occasions was largely made and authorized by the legal representatives, who were the owners of the property. As such, the Ruhls had a legal right to enter the house. With the permission of the Ruhls, Officers Nies and Alderman entered the house and made service upon the plaintiff. We agree with the district judge that under these circumstances there was no constitutional violation on the part of either the officers or the Ruhls.
 
 
 6
 On the second entry, the officers had an order of the Orphans' Court authorizing their action. Further, they had been instructed by the Sheriff that, if the plaintiff refused to obey the order, to arrest her. Under these circumstances, the district court correctly ruled that
 
 
 7
 Dempsey and Seib are entitled to summary judgment on the unlawful arrest claim since the facts undisputably establish the validity of their defense that they acted in good faith. There is no question that the Orphans' Court had entered the order pursuant to which they acted, that their superior, Sheriff Wade, interpreted the order as an order for immediate eviction and that Sheriff Wade ordered them to do precisely what they did: to ask plaintiff to leave the premises voluntarily and to transport her anywhere she wanted to go and, in the event that she refused to do so, to place her under arrest for trespass and failure to obey a court order. Under these circumstances Dempsey and Seib cannot be held personally liable for their conduct. See, e.g., Tymiak v. Omoett, 676 F.2d 306 (8th Cir.1982).
 
 
 8
 However, the district court held that this grant of summary judgment in favor of Dempsey and Seib did not apply to the plaintiff's claim "for the alleged use of excessive force" in making the arrest, and, in connection with that charge, the motion for summary judgment in their favor was denied. We find no error in the district court's disposition of this claim.
 
 
 9
 Plaintiff's claim of a deprivation or loss of property in connection with the actions of the defendants was properly dismissed on the authority of Hudson v. Palmer, 104 S.Ct. 3194 (1984). So far as any contention that the parties had engaged in a conspiracy to deny plaintiff her constitutional rights, the district judge found that there was a complete absence of any evidence of such a conspiracy and we find no basis in the record for reversing this finding of the district judge.
 
 
 10
 Accordingly, we affirm the decision of the district court herein.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 In her brief in this court, the plaintiff describes the relationship between her and the deceased George A. Ruhl thus:
 Although Mrs. Davis [the plaintiff] and Mr. Ruhl were not married, they had lived together as man and wife since approximately 1960.
 
 
 [2]
 The claim of the plaintiff as stated in her attorney's letter was:
 Mrs. Darlene Davis Ruhl is the common law wife of the late George Ruhl and that she is entitled to share in the decedent's estate under the Estates and Trust Article, Section 3-102 and accordingly, will assert her rights in the Orphans' Court as the common law wife of the decedent.
 
 
 [3]
 For a statement of the law of Maryland on common-law marriages, see Goldin v. Goldin, 48 Md.App. 154, 426 A.2d 410 (1981)
 
 
 [4]
 In their petition for the temporary injunction, the legal representatives of the Estate alleged that upon their visit to the house the day before (October 4), they "had personally observed numerous items of personal property belonging to the Estate and having a value far in excess of $5,000 having been removed therefrom and either wrongfully converted to the use of the respondents [the plaintiff] or secreted by them," that, as a result, "the respondents ... have committed waste upon the Estate" and that "it is in the best interest of the Estate in order to preserve the assets of the Estate that an order be issued by this Court ex parte compelling the respondents to remove themselves from the premises and to deliver possession of all personal property belonging to the Estate forthwith...."
 On the basis of that verified petition, the Orphans' Court issued its order that the respondents "shall forthwith remove themselves from the premises known as 1616 Frederick Street, Cumberland, Allegheny County, Maryland, and shall deliver the possession of all items of personal property immediately upon receipt of a copy of this Order and upon penalty of contempt of this Court...." The Order also directed the Sheriff of the County "to carry into effect the terms of this Order." The Court provided, however, that the respondents should have leave to move for a hearing upon not more than two days notice and that in any event the injunction should expire by its terms on October 16.